**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **MARION T, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Cause No. 1:12-CV-456** |
| ) | |
| **THERMOFORMING MACHINERY** ) | |
| **& EQUIPMENT, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Before the Court in this declaratory judgment action is Plaintiff Marion T, LLC's

("Marion") Motion for Summary Judgment against Defendant Thermoforming Machinery &

Equipment, Inc. ("Thermoforming"), regarding the ownership of certain industrial equipment.

(Docket # 22.)  Marion argues that the executed contract between the parties clearly and

unambiguously sets forth the ownership rights of each party, and therefore, the inquiry is limited

to the terms of the contract.  (Docket # 23.)  In response, Thermoforming argues that both parties

mistakenly executed an incorrect draft of the contract, and therefore, the inquiry must include

extrinsic evidence, which it contends demonstrates a mutual mistake.  (Docket # 26.)  Because

there is a material dispute of fact on whether the executed contract reflects the actual intent of

the parties, Marion's motion will be DENIED.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Although ownership of the industrial equipment in dispute has resulted in multiple

lawsuits, the underlying facts are straightforward.  Marion owns an industrial manufacturing

storage facility at which the equipment in dispute was housed.  (Lee Aff. ¶ 2.)  At one point the

equipment was owned by non-party Trienda, but when Trienda failed to pay its rent, Marion

entered into a series of contracts with Thermoforming to purchase the equipment.  (Kruschke Dec. ¶¶ 5-9.)

In May 2012, the parties entered into a final agreement for the disposition of certain equipment; Thermoforming would purchase the equipment listed in the contract and Marion would own whatever was not listed.  (Kruschke Dec. ¶ 9.)  According to Marion, the parties executed a clear and unambiguous contract listing the equipment Thermoforming would purchase.  Thermoforming then proceeded to violate the contract by removing and selling equipment not listed in the contract.  (Lee Aff. ¶¶ 6-7.)

According to Thermoforming, however, three drafts of the May 2012 contract were created–each listing different equipment–and while the parties executed the first draft, this was inadvertent as both parties believed they were signing the third draft.  (Kruschke Dec. ¶ 16.)  Thermoforming explains that the parties exchanged the three drafts of the May 2012 contract and that its President, Donald Kruschke, repeatedly communicated with Marion's manager, Lester Lee, on the contract's terms.  (Kruschke Dec. ¶¶ 11-15.)  After reading the third draft and discussing the phrasing of several terms with Lee, Kruschke asked an assistant to print it out.  (Kruschke Dec. ¶¶ 15-16.)  The assistant mistakenly printed out the first draft and Kruschke proceeded to make some final modifications and sign this draft without realizing it was the wrong version.  (Kruschke Dec. ¶ 16.)

In support of its position, Thermoforming proffers emails between the parties showing that they exchanged the three drafts, that the third draft was the result of edits made to the earlier drafts, and that the third draft includes the equipment that Marion alleges Thermoforming improperly removed.  (Dft.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. Exs. C-E.)

Thermoforming also puts forth a declaration from Kruschke in which he states that prior to executing the May 2012 contract, the parties visited Marion's facility, determined which equipment Thermoforming would purchase, and that this equipment is listed in the third draft. (Kruschke Dec. ¶ 10.)  Finally, Kruschke states that after the contract was executed, Marion supervised the removal and resale of equipment listed in the third but not the first contract. (Kruschke Dec. ¶ 17.)

## II.  LEGAL STANDARD

Summary judgment is proper when the pleadings, affidavits, and discovery and disclosure materials on file show there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c).  A genuine issue of material facts exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citation omitted).  When ruling on a summary judgment motion, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Instead, the court determines whether the evidentiary record shows a material dispute of fact requiring a trial.  *Id*. If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Id*.  A court must construe the record in the light most favorable to the nonmovant; however, the nonmovant may not rest on the pleadings, but must instead affirmatively demonstrate there is a genuine issue of material fact for trial.  *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 173 (7th Cir. 1996).

### III.  ANALYSIS

As a preliminary matter, the parties dispute whether Indiana or Ohio law applies to this case.  Marion contends that Indiana law applies as the case was brought pursuant to an Indiana statute.  Thermoforming contends that Ohio law applies because it is an Ohio corporation and because it obtained service first over Marion in Ohio in a case covering the same contract.

A federal court sitting in diversity applies the choice of law rules of the forum in which it sits.  *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013).  Under Indiana law, "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."  *Barron v. Ford Motor Co. of Can. Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992).  "If the purposes and policies of two potential rules are the same, the forum should apply the forum law."  *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997); *see Int'l Adm'rs v. Life Ins. Co.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985).

The Court's analysis reveals there are no differences between the relevant Indiana and Ohio laws that would affect the outcome of this litigation.  In each forum, a party may seek to reform a contract entered into under a mutual mistake of fact, and the party seeking reformation may introduce parol evidence to reflect what the true intentions of the party were.  *Estate of Reasor v. Putnam Cnty.*, 635 N.E.2d 153, 160 (Ind. 1994); *Rylee Ltd. v. Izzard Family P'ship*, 897 N.E.2d 208, 211 (Ohio Ct. App. 2008).  Moreover, in both forums a mutual mistake can be found where the parties to the contract reach an agreement but fail to correctly reduce that agreement to writing, the party seeking reformation must prove by clear and convincing evidence that the mistake was mutual, and the mistake must be material or go to the essence of

the contract.  *See ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 750 F. Supp. 2d 839, 845-47 (N.D. Ohio 2010); *Ball v. Versar*, 454 F. Supp. 2d 783, 803-05 (S.D. Ind. 2006).  Thus, since there is no difference between Indiana and Ohio jurisprudence, the Court will apply this forum's law.  *Schaefer v. Newton*, 868 F. Supp. 246, 252 (S.D. Ind. 1994).

Turning to the merits, the parties dispute the legal premise from which the contract can be interpreted.  Marion argues that under Indiana law, "[w]hen the terms of a contract are clear and unambiguous, those terms are conclusive, and the court will not construe the contract or look at extrinsic evidence but rather will simply apply the contract provisions."  *John M. Floyd & Assoc. Inc. v. Star Fin. Bank*, 489 F.3d 852, 854 (7th Cir. 2007) (quoting *Forty-One Assoc., LLC v. Bluefield Assoc., L.P.*, 809 N.E.2d 422, 427 (Ind. Ct. App. 2004)).  Marion asserts that because the executed contract (the first draft) is clear and unambiguous, its provisions are determinative.

Thermoforming, however, correctly argues that "parol evidence is always admissible" to demonstrate mutual mistake.  *Franklin v. White*, 493 N.E.2d 161, 165 (Ind. 1986).  Under Indiana law, "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties."  *Perfect v. McAndrew*, 798 N.E.2d 470, 478 (Ind. Ct. App. 2003) (citation omitted).  Further, the party seeking to avoid the transaction must establish the true intentions of the parties by clear and convincing evidence.  *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 771 (Ind. Ct. App. 2003) (citing *Estate of Reasor*, 635 N.E.2d at 160).

Thermoforming's evidence suggests that prior to executing the May 2012 contract, the parties met at Marion's storage facility and purportedly came to an agreement about which

5

equipment Thermoforming would purchase.  According to Thermoforming, this agreement is reflected in the third but not the first agreement.  Thermoforming's theory of mutual mistake also has some support in the e-mail correspondences between the parties, which demonstrates there were multiple drafts of the contract, and that the third draft was composed from edits of the first and second drafts.  Additionally, there is evidence suggesting that Marion's conduct after the contract was executed–supervising the removal of equipment listed only in the third draft–is consistent with Thermoforming's view of the case.

Marion moved for summary judgment solely on the premise that the contract is clear and unambiguous, and therefore, the Court cannot look beyond the four corners of that instrument to interpret the true intent of the parties.  Marion loses on that argument because Thermoforming has introduced evidence of a mutual mistake, making parol evidence admissible.  And although Thermoforming has introduced evidence of mutual mistake and argued that the executed contract should be reformed, the factual record is not adequately developed such that the Court can determine which draft reflects the true intent of the parties.  *See Irvin v. Kaczmaryn*, 913 F. Supp. 1190, 1200 (N.D. Ill. 1996) (denying summary judgment because of an "inadequately developed factual record" and because nonmovant's evidence was not rebutted by the movant); *Cobraco Mfg. Co., Inc. v. Valley View Specialties Co.*, No. 90 C 0284, 1992 WL 77672, at *6 (N.D. Ill. Apr. 6, 1992) (denying motion for summary judgment because "summary judgment is inappropriate when questions of law turn in significant part on the underlying factual record, which the parties have not adequately developed").  Accordingly, further factual development of the record is necessary before the Court can determine which draft of the contract controls.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Marion's motion for summary judgment. (Docket # 22.)  The Court sets the matter for a telephonic status scheduling conference for December 27, 2013, at 9:00 A.M.  The Court will initiate the call.

SO ORDERED.

Enter for this 5th day of December, 2013.

/s/ Roger B. Cosbey
ROGER B. COSBEY
United States Magistrate Judge